Nash, J.
 

 We had thought, and are still of opinion, that the questions raised in this case were settled in that of
 
 Patton,
 
 5th Tre. 180. There it was held, that, although the examination of the woman was. in itself, upon the trial of the issue, but.
 
 prima facie
 
 evidence, that the defendant was the father
 
 of the
 
 child, yet in the absence
 
 of
 
 testimony,
 
 showing that he was not.
 
 it is conclusive of the
 
 fact,
 
 and the jury is bound in law to find accordingly'-; that, the issue- is given to the defendant on his demand and is emphatically his issue, and though he maintains a negative in its investigation, he is the actor, and is bound to
 
 prove
 
 that he is
 
 not
 
 the, father ; and, to do that, it is not sufficient for him to raise, a
 
 doubt
 
 upon the question. We have heard nothing, upon the present, occasion, to shake our confidence in the correctness of that decision, and, i f it. be sound, his Honor committed no'error in rejecting the evidence, offered, because it. was immaterial to the establishment of the issue, which the defendant had undertaken to affirm, and. at. farthest, could but raise, a doubt as to the fact, for it might be all true and still t.he defendant be guilty. It has been urged, however, that such testimony was received by the Judge below, who
 

 
 *51
 
 tried
 
 Pattons
 
 case, and its reception sanctioned by this Court. Upon that occasion, the testimony was admissible, not for the purpose of contradicting the examination, but of impeaching the oral testimony of the woman herself, who was examined as a witness in the cause. But ano» ther answer is, that it was received without objection, and his Honor, the presiding Judge, left no doubt in what light he received it, by stating to the jury, that even supposing her credibility
 
 on the trial to
 
 have been weakened or destroyed, “that did not show that he (the defendant)
 
 was not the father of the child.’'
 
 But on examining the expression relied on. used by this Court, it will be found to apply, not to the reception oí the testimony, but to the
 
 charge
 
 of his Honor. It has again been urged, that the opinion in
 
 Patton’s
 
 case is not sound, for two reasons ; first, because it takes away
 
 from
 
 defendants the protection. provided for them by the act of 1836. In this, as in any other case, it. is our duty to give such a construction to a statute, as will carry out the intention of the Legislature. One of the rules, by which this intention is to be ascertained, is the mischief to be remedied. As the law stood, upon the passage of the act of 1814. the paternity of a bastard child was ascertained and fixed by the examination of the woman ; so much so, that, if the child, when born, should prove to be black, the defendant had no redress in a Court of law, and it was no answer to the charge, that, either from age, accident or disease, he was impotent — he was bound to maintain the ch id. This -was the evil the act of 1814 intended to remedy. And the Legislature had an entire right to model the remedy, as they thought the good of the community required. They have done so, by saying to the accused, yo.u may, Jf you please, submit the question of your g.ulh to a jury, but if you do so, the burthen of showing your-innocence shall be on you ; for the examination of the woman shall ,be sufficient to oonvict you, unless you show
 
 y¡oq
 
 not
 
 *52
 
 the father of the child — you must show the fact. Does this leave the party, where the act of 1814 placed him ? Clearly not. The second objection is, that the opinion in
 
 Patton's
 
 case gives to the
 
 term, prima facie,
 
 a force and extent, not contemplated by the Legislature ; that they meant no more, than the examination should supersede the necessity of the introduction of the woman, as a witness — that evidence, in law, was not proof. It is very certain, evidence and proof are not the same, one being the cause and the other' the effect. The argument of the defendant would, upon this point, be complete, but for the phraseology of the, act. If the Legislature intended, that the examination should have no other effect, than that contended for by the defendant, they would have contented themselves by simply making it evidence. They have not done so, but directed to what
 
 extent
 
 it
 
 shall
 
 be. We have no right to presume, that the makers of the law did not understand the legal phrase used by them. When, therefore, they say, that the examination shall be
 
 prima facie
 
 evidence,-they obviously must mean, what the common law meant, that, if unanswered, the examination fixes the paternity of the child, and the jury must find that the defendant is guilty. In such case, therefore, it is both evidence and proof. In many cases it may operate great hardships; to remedy this is the business of the Legislature. To admit the testimony offered in this case* would-be in effect to repeal the act of 1814, and throw all the bastards of the country upon the public. But the principle adopted in that act is no novelty. It is the application of an old and familiar rule of evidence. The -law presumes all children born in wedlock tobe legitimate, until he, who denies it, establishes the contrary. This is done by showing either impotency on the part of the husband, or non-access, both of which come under the principle of a natural impossibility, that the husband could be the father. This doctrine of impotency was og
 
 *53
 
 tablished as early as the reign of the first Edward. See
 
 Foxcraft’s
 
 case, reported in 1st Rolle’s Abr. 359, and cited in the 4th part of Starkie on evidence, 219. In the
 
 Ban~ berry Peerage case, 2
 
 Selwyn’s
 
 nisi prius,
 
 the Judges decided, that the evidence, to prove a husband was not the father of his wife’s child, must be of such facts and circumstances, as were sufficient to
 
 prove
 
 that no sexual in. tercourse had taken place between them at any time, when by such intercourse the husband could, by the laws of nature, be the father of the child. Each of these defences stands upon the same ground, that is, natural impossibility, that the husband could be the father, and nothing short of this impossibility will bastardise such issue. It was further urged in this case, that the evidence rejected had a tendency? to support the defence, and was on that account admissible. If the nature of the issue, which the jury were trying, and the efTect given by the act of 1814 to the examination of the woman, be considered, it will be seen the evidence could have, legitimately, no such effect, and was, therefore, properly rejected. The defendant, by his plea, denied he was the father of the child — the issue was as to that fact and it was necessary for him to prove, that he was not. It was not sufficient for him to create a doubt as to the fact. The principle was clearly stated to the jury, and it is a rule, that no faets or circumstances are admissible in evidence, unless they have a tendency' to prove or disprove the issue joined. If all the rejected testimony had been received, what tendency? could it have in proving, that the defendant could not be the father of the child ? T© give it its utmost weight, it would not go further than to excite a doubt as to the fact. Every portion of that testimony might be true, and yet the defendant be. guilty.. In'
 
 Lowas and Ilolmden, 2
 
 Str. 940, in which the bastardy of a child of a married woman was the enquiry, evidence of inability? on the part of the husband from disease was
 
 *54
 
 admitted, but the evidence, amounting to
 
 improbability
 
 only, was thrown out, as it was shown the husband had access to his wife. So, here, the most that could be claimed for the rejected testimony was, that it might show an improbability, that the defendant was guilty. But there is another ground, upon which the testimony, offered for the purpose of discrediting the woman, was properly rejected. She was not a witness in the case. Where the State does introduce the mother, she then stands before the jury as any other witness, as to any facts deposed to by her out of her examination. As was said in
 
 Patton’s
 
 case, if, after her examination before the magistrates, she had been convicted of perjury, it would not take from her examination its legal effect and operation under the act of 18 H.
 

 We repeat that we see no reason to depart from the opinion expressed in
 
 Patton’s
 
 case. On the trial of every issue in the ease of bastardy, under the act of IS 14, the examination of the woman becomes full proof of the fact of paternity, and the jury is bound so to find, unless the defendant shall show
 
 the fact
 
 not to be so. And this he can do only by proof ol impotence, or non access, at such time, as by the law of nature he could not be the father, and the testimony offered in this case was properly re« -jected.
 

 Per Curiam.
 

 Judgment affirmed.